UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
**Caption in Compliance with D.N.J. LBR 9004-1**
**PORZIO, BROMBERG & NEWMAN, P.C.**
100 Southgate Parkway
P.O. Box 1997
Morristown, New Jersey 07962
(973) 538-4006
(973) 538-5146 Facsimile
Warren J. Martin Jr., Esq. (wjmartin@pbnlaw.com)
Kelly D. Curtin, Esq. (kdcurtin@pbnlaw.com)
Rachel A. Parisi, Esq. (raparisi@pbnlaw.com)
*Proposed Counsel to Debtors*

In Re:

Garces Restaurant Group, Inc., d/b/a Garces Group, *et al*.,[1]

Debtors.

Case No.: 18-19054 (JNP)

(Joint Administration Pending)

Chapter: 11

**Hearing Date and Time:**
**May 3, 2018, at 2:00 p.m.**

## DEBTORS' MOTION FOR INTERIM AND FINAL ORDERS UNDER SECTIONS 361 AND 363 OF THE BANKRUPTCY CODE (A) AUTHORIZING USE OF CASH COLLATERAL, (B) GRANTING ADEQUATE PROTECTION, (C) MODIFYING THE AUTOMATIC STAY, AND (D) SETTING A FINAL HEARING

Garces Restaurant Group, Inc., d/b/a Garces Group., *et al*, (the "Debtors"), submit this

motion (the "Motion") for entry of an interim order (the "Interim Order") pursuant to sections

361 and 363 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 4001 of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") (a) authorizing use of cash

collateral, (b) granting adequate protection, (c) modifying the automatic stay, and (d) setting

---

[1] The Debtors in these Chapter 11 Cases (joint administration pending) and the last four digits of their employee identification numbers are: GRGAC1, LLC d/b/a Amada (7047); GRGAC2, LLC d/b/a Village Whiskey (7079); GRGAC3, LLC d/b/a Distrito Cantina (7109); GRGAC4, LLC (0542); Garces Restaurant Group, Inc. d/b/a Garces Group (0697); Latin Valley 2130, LLC; La Casa Culinary, LLC d/b/a Amada Restaurant (4127); Garces Catering 300, LLC d/b/a Garces Catering (3791); Latin Quarter Concepts, LLC d/b/a Tinto d/b/a Village Whiskey (0067); UrbanFarm, LLC d/b/a JG Domestic (3014); GR300, LLC d/b/a Volver (0347); GRG2401, LLC (7222); GRGChubb1, LLC (8350); GRGFC1, LLC (2040); GRGKC1, LLC; GRGWildwood, LLC (9683); and GRGNY2, LLC (0475).

a final hearing pursuant to Rule 4001 of the Bankruptcy Rules.  In support of the Motion, the

Debtors respectfully represents as follows:

## RELIEF REQUESTED

1.      By the Motion, Debtors request entry of an Order: (i) authorizing the Debtors'

use of cash collateral of M&T Bank, also known as Manufacturers and Traders Trust Company,

a New York-chartered bank ("M&T", the "Bank") pursuant to a thirteen (13) week budget (as

may be amended, the "Budget"), which current version is attached to the proposed Interim Order

as **Exhibit A**; (ii) granting the Bank adequate protection in the form of (a) automatically

perfected replacement liens pursuant to sections 361 and 363 of the Bankruptcy Code, to the

extent the Bank's cash collateral is used and to the extent of any diminution in the value of the

Bank's collateral, with the same priority in the Debtors' post-petition collateral, and proceeds

thereof, that the Bank held in the Debtors' prepetition collateral, (b) monthly interest payments in

accordance with the Budget; (iii) modifying the automatic stay; and (iv) giving notice of and

scheduling an interim and final hearing pursuant to Bankruptcy Rule 4001.

## JURISDICTION

2.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The statutory predicates for the relief sought herein are sections 361 and 363 of the

Bankruptcy Code and Rule 4001 of the Bankruptcy Rules.

## BACKGROUND

5.      On the date hereof (the "Petition Date"), the Debtors each filed a voluntary petition

for relief pursuant to chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court

3934177

for the District of New Jersey (the "Court")

6.    The Debtors continue to operate their business and manage their property as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made and, as of the date of the filing of the Motion, no official committees have been appointed or designated.

7.    A detailed description of the Debtors' business and the facts precipitating the filing of the Debtors' chapter 11 cases is set forth in the Affidavit of Jose Garces in Support of the Debtors' Chapter 11 Petition And First Day Motions (the "Garces Affidavit") filed concurrently herewith and incorporated by reference.

**A.  The Debtors' Business**

8.    Since opening Amada as their first restaurant in 2005, the Debtors and related entities have grown to over $40 million in revenue, approximately 750 employees, and operate in three business segments: catering, managed services, and owned restaurants.  *See* Garces Affidavit.

9.    Jose Garces, Iron Chef and 2009 winner of the James Beard award for "Best Chef, Mid-Atlantic" owns 100% of each of the catering and managed services entities.  *See* Garces Affidavit.  The catering entities host and provide restaurant quality fare for over 1,500 events annually for clients such as the Kimmel Center for the Performing Arts, the Academy of Music, the Cira Centre, and the Philadelphia 76ers Training Complex, the University of Pennsylvania and the Wharton School corporations and foundations including Google, Twitter, Comcast, Susan G. Komen Foundation, The Philadelphia Eagles, American Express, and Goldman Sachs, and operate a concessions division providing food services to Delaware River Waterfront Commission's popular Spruce Street Harbor Park and Winterfest activities.  *See* Garces

3

Affidavit.  The managed services entities work under contract with a third-party owner (such as a Casino) and create for that owner the concept, space, and the food and beverage menu, as well as hire and train staff, among other things.  *See* Garces Affidavit.

### B. M&T Bank Indebtedness

#### a. *The Loans*

10.     Pursuant to that certain Credit Agreement, dated June 27, 2014 (as amended, the "Credit Agreement"), by and among M&T Bank, also known as Manufacturers and Traders Trust Company, a New York-chartered bank ("M&T", the "Bank"), Jose A. Garces ("Garces" or the "Guarantor"), the Debtors[2] and certain related entities, M&T made available to the Debtors certain credit facilities comprised of (i) a term loan in the original principal amount of $4,000,000 (the "Term Loan") and a development loan in the maximum principal amount of $4,500,000 (the "Development Loan") (the Term Loan and the Development Loan are referred to herein each as a "Loan" and together as the "Loans").

11.     The Debtors' obligations to the Bank under the Term Loan are evidenced by that certain Term Note, dated June 27, 2014, in the original principal amount of $4,000,000, as amended and restated by that certain Amended and Restated Term Note, dated August 8, 2014 (as amended, the "Term Note").

12.     The Debtors' obligations to the Bank under the Development Loan are evidenced by (1) that certain Term Note (Development Line Loan 1st Draw)) dated June 21, 2014, in the principal amount of $300,000, (2) that certain Term Note (Development Line Loan 2nd Draw), dated September 24, 2014 in the principal amount of $150,000, (3) that certain Term Note

---

[2] Of the Debtors, Garces Restaurant Group, Inc., La Casa Culinary, LLC, Latin Quarter Concepts, LLC, GRGFC1 LLC, Urbanfarm LLC, GRG300, LLC, Garces Catering 300, LLC, GRGAC1, LLC, GRGAC2, LLC, and GRGAC3, LLC were borrowers under the Credit Agreement.  GRGAC4, LLC, GRG 2401 LLC, GRGChubbl, LLC GRGKC1, LLC, GRGWildwood, LLC, and GRGNY2, LLC were added as additional borrowers under the Forbearance Agreement as further described herein.

(Development Line Loan 3rd Draw), dated October 3 2014 in the principal amount of $650,000, (4) that certain Term Note (Development Line Loan 4th Draw), dated October 3 2014, in. the principal amount of $700,000, (5) that certain Term Note (Development Line Loan 5th Draw), dated August 3, 2015 in the principal amount of $2,000,000, (6) that certain Term Note (Development Line Loan 6th Draw), dated December 4, 2015, in the principal amount of $250,000 and (7) that certain Term Note (Development Line Loan 7th Draw), dated March 21, 2016, in the principal amount of $300,000 (collectively, as amended, the "Development Note").

13.     The Debtors' obligations to the Bank under the Loans are secured by, among other things, a lien and security interest in substantially all of the Debtors' assets pursuant to that certain General Security Agreement, dated July 27, 2014 (as amended, the "Security Agreement"), under which the Debtors granted to the Bank a security interest in and to the "Collateral" as that term is defined therein (the "Collateral"), which includes, without limitation, all accounts. The Bank perfected its interest in the Collateral by *inter alia*, filing UCC-1 Financing Statements with the Commonwealth of Pennsylvania and States of New Jersey and Delaware.

14.     The Debtors' obligations to the Bank under Loans are also guaranteed by the Guarantor pursuant to that certain Continuing Guaranty (Personal), dated June 27, 2014 (as amended, the "Guaranty").

15.     The Credit Agreement, the Term Note, the Development Note, the Security Agreement, and the Guaranty, together with all documents, instruments and agreements executed in connection therewith and/or in furtherance thereof, as amended from time to time, are referred to herein, collectively, as the "Original Loan Documents". As of June 22, 2017, the total principal amount due under the Original Loan Documents is $6,286,790.25.

5

3934177

### b.   *The Corporate Card*

16.     In addition to the Loans, the Bank made available to the Debtors' related entity, Garces Restaurant Group, Inc., a corporate charge card account in the maximum principal amount of $500,000 (the "Corporate Card"), pursuant to Agreement for Visa Charge Cards and Card Products, dated September 29, 2014 (the "Corporate Card Agreement").

17.     Garces Restaurant Group, Inc.'s obligations to the Bank under the Corporate Card are secured by a security interest in and lien on all assets of Garces Restaurant Group, Inc., pursuant to that certain Continuing Guaranty dated September 29, 2014 (the "Corporate Card Security Agreement") under which the Debtors granted to the Bank a security interest in and to the "Collateral" as that term is defined therein (the "Collateral").

18.     Garces Restaurant Group, Inc.'s obligations to the Bank under the Corporate Card are also guaranteed by the Guarantor, pursuant to (the "Corporate Card Guaranty").

19.     The Corporate Card Agreement, the Corporate Card Security Agreement, the Corporate Card Guaranty, together with all agreements, documents and instruments executed in connection therewith are referred to hereinafter, together, as the "Corporate Card Documents." As of June 22, 2017, the total principal amount due under the Corporate Card Documents is $499,681.29.

### c.   *The Forbearance Agreement*

20.     On June 23, 2017, M&T entered into a Forbearance and Amendment to Loan Documents Agreements (the "Forbearance Agreement") with the Debtors and the Guarantor and certain additional borrowers (each referred to herein, each individually, as a "Borrower" and, together, as the "Borrowers") (the Borrowers and the Guarantor are each individually referred to as an "Obligor," and, collectively, as the "Obligors"), whereby the Bank agreed to forbear from

exercising its rights and remedies under the Original Loan Documents and the Corporate Card Documents through December 31, 2017.

21.    Among other things, the Forbearance Agreement provided "[e]ach Obligor hereby acknowledges and agrees that a default or Event of Default under any of the Loans or the Corporate Card constitutes a default or Event of Default under each of the other Loans and the Corporate Card, and therefore the Loans and the Corporate Card are hereby cross-defaulted. In addition, the Obligors acknowledge and agree that all Collateral securing any of the Loans and/or the Corporate Card also secures each of the other Loans and the Corporate Card, and that all Collateral securing any of the Loans and/or the Corporate Card also secures all of the other Loans and the Corporate Card, and the Loans and the Corporate Card are hereby cross-collateralized."  Forbearance Agreement at § 5.2.

22.    As consideration for the Bank entering into the Forbearance Agreement, the Borrowers agreed among other things, to pay to the Bank certain fees, join the Additional Borrowers as borrowers with full joint and several liability for all of the Borrowers' obligations to the Bank, pledge and grant to the Bank additional security interests, including security interests in and liens on all liquor licenses, management contracts, certain membership interests, real property, provided certain releases and executed additional documents (the "Forbearance Documents").

23.    Together, pursuant to the Original Loan Documents, Corporate Card Documents and the Forbearance Documents (collectively, the "M&T Loan Documents"), the Bank has an alleged claim against the Debtors in the approximate principal amount of $6,765,518.03 as of April 30, 2018 secured by the Borrowers' assets.

7

3934177

**C.  The Debtors' Immediate Need for Use of Cash Collateral**

24.     The Debtors require immediate authority to use cash collateral as defined herein

in order to continue their business operations without interruption toward the objective of

formulating an effective plan of reorganization.  To enable the Debtors to continue fulfilling the

needs of their customers and to avoid a disruption of theirs and their clients' business operations

and any potential impact on their clients' reputations in their respective industries, the Debtors

require the use of cash collateral for the continuation of their operations without disruption.

Most importantly, these funds are required immediately to fund the Debtors payroll.

25.     The Debtors' Budget incorporates the Debtors' anticipated income and expenses

for a thirteen (13) week period by the Debtors and related entities.[3]  Preliminary, the Debtors are

seeking approval of an interim period through May 28, 2018 (the "Interim Period") as reflected

in the Budget attached as **Exhibit A** to the proposed Interim Order pending a final hearing.

Without authorization to use cash collateral in accordance with the Budget, the Debtors

operations will cease to the detriment of their employees, customers, and creditors.

26.     In accordance with the disclosure requirements of Local Rule 4001-3, a summary

of the material terms of the proposed usage of cash collateral, including a description of each of

the provisions required to be highlighted by such rules, are set forth in the chart below[4]:

| The Amount Of Cash Collateral Sought To Be Used | The Debtors shall use cash collateral in accordance with the Budget attached to the proposed Interim Order as **Exhibit A**, including for the following purposes: (a) maintenance and preservation of their assets; (b) the continued operation of their business, including but not limited to payroll, payroll taxes, employee expenses, and insurance costs; (c) the purchase of supplies; and (d) other expenses reflected in the Budget, to the extent and up to the amounts set forth in the Budget; provided, however, that the Debtors may (i) exceed any line item |
|---|---|

---

[3] The Budget includes a line item for "DIP Funds."  In advance of the anticipated need for such "DIP Funds", the Debtors intend to file a separate motion authorizing the Debtors to obtain post-petition financing.

[4] The descriptions of the material terms of the proposed Interim Order provided in this Motion are intended only as a summary thereof. In the event of any inconsistency between the descriptions set forth herein and the terms of the Interim Order, the terms of the Interim Order shall govern.

| | |
|---|---|
| | expenditure in the Budget by up to five percent (5%) thereof and (ii) exceed any line item expenditure in the Budget by more than five percent (5%) thereof for so long as, on any date of determination and after giving effect to such expenditures, the total aggregate expenditures of the Debtors since the Petition Date do not exceed one hundred five percent (105%) of the total aggregate expenditures of the Debtors projected in the Budget as of such date.  *See* Interim Order at ¶ 1. |
| The Adequate Protection To Be Provided For The Use Of Cash Collateral | The following adequate protection will be provided:<br><br>a.  Replacement Lien. A replacement perfected security interest under section 361 of the Bankruptcy Code to the extent the Bank's cash collateral is used by the Debtors and to the extent of any diminution in the value of the collateral, with the same priority in the Debtors' post-petition collateral, and proceeds thereof, that the Bank held in the Debtors' pre-petition collateral.<br><br>b.  Priority of Replacement Lien. The Replacement Liens shall be enforceable against the Debtors, their estates and any successors thereto, including without limitation, any trustee or other estate representative appointed in these chapter 11 cases, or any case under chapter 7 of the Bankruptcy Code upon the conversion of these chapter 11 cases, or in any other proceedings superseding or related to any of the foregoing (collectively, a "Successor Case"). Except as provided herein, the Replacement Lien shall not be made subject to or *pari passu* with any lien or security interest by any court order heretofore or hereafter entered in these chapter 11 cases or any Successor Case, and shall be valid and enforceable against any trustee appointed in these chapter 11 cases or any Successor Case, or upon the dismissal of these chapter 11 cases or any Successor Case. The Replacement Liens shall not be subject to sections 506(c) (effective upon entry of the Final Order), 510, 547, 549, or 550 of the Bankruptcy Code. No lien or interest avoided and preserved for the benefit of the estates pursuant to section 551 of the Bankruptcy Code shall be made *pari passu* with or senior to the Replacement Lien. The Replacement Lien shall not include avoidance actions pursuant to 11 U.S.C. §§ 544, 547, 548, 549 and 550.<br><br>c.  Adequate Protection Superpriority Claims. As further adequate protection against any diminution in value of the interests of M&T in the pre-petition collateral, to the extent the Replacement Lien provided for hereby proves insufficient to protect M&T's interest in and to the cash collateral, M&T is hereby granted as and to the extent provided by sections 503(b) and 507(b) of the Bankruptcy Code allowed superpriority administrative expenses claims in these chapter 11 cases in the amount of the Pre-Petition Debt (the "Adequate Protection Superpriority Claim").<br><br>d.  Priority of Adequate Protection Superiority Claims. The Adequate Protection Superpriority Claims, to the extent the Replacement Lien is deemed insufficient, shall have priority over all administrative expense claims and unsecured claims against the Debtors or their estates, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in ordered pursuant to sections 105, 326, 328, 330, 331, 364, 365, 503(a), 503(b), |

9

|  | 506(c), 507(a), 507(b), 546(c), 546(d), 1113 and 1114 of the Bankruptcy Code, except and subject to fees pursuant to 28 U.S.C. § 1930(a)(6) and the Carve-out. |
|  | e. <u>Modification of Automatic Stay</u>. The automatic stay under Bankruptcy Code section 362(a) is hereby modified as necessary to effectuate all of the terms and provisions of this Interim Order, including, without limitation, to: (a) permit the Debtors to grant the Replacement Lien and Adequate Protection Superpriority Claims; (b) permit the Debtors to perform such acts as M&T may request, in its sole discretion, to assure the perfection and priority of the liens granted herein; and (c) authorize the Debtors to pay, and M&T to retain and apply, payments made in accordance with the terms of this Interim Order. |
|  | f. <u>Deemed Perfected.</u>  The replacement lien and security interest granted herein is automatically deemed perfected upon entry of this Order without the necessity of the Bank taking possession, filing financing statements, mortgages or other documents. Although not required, upon reasonable request by the Bank, the Debtors shall execute and deliver to the Bank any and all UCC Financing Statements, UCC Continuation Statements, Certificates of Title or other instruments or documents considered by the Bank to be necessary in order to perfect the security interests and liens in the Debtors' post-petition collateral and proceeds granted by this Order, and the Bank is authorized to receive, file and record the foregoing at the Bank's own expense, which actions shall not be deemed a violation of the automatic stay. |
|  | g. <u>Adequate Protection Payments</u>. As additional adequate protection, the Debtors shall make payments to M&T in accordance with the Budget and at the time designated in the Budget (the "<u>Adequate Protection Payments</u>"); provided that no monthly interest payment to the Bank is less than $37,038.56. |
|  | h. <u>Perfection of Replacement Lien</u>. This Interim Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the Replacement Lien, without the necessity of filing or recording any mortgage, financing statement or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement) to validate or perfect (in accordance with applicable non- bankruptcy law) the Replacement Lien, or to entitle M&T to the priorities granted herein. Notwithstanding the foregoing, the Debtors are authorized and directed to execute and deliver promptly to M&T all such financing statements, mortgages, notices and other documents as M&T may reasonably request, and M&T may file a photocopy of this Interim Order as a financing statement with any filing or recording office or with any registry of deeds or similar office, in addition to or in lieu of such financing statements, notices of lien or similar instruments. |
|  | *See* Interim Order at ¶ 4. |
| Events Of | The occurrence of any of the following events, unless waived by M&T or |

3934177

| | |
|---|---|
| Default | otherwise ordered by the Court, shall constitute an event of default (collectively, the "<u>Events of Default</u>"): |
| | a. the failure by the Debtors to perform, in any respect, any of the terms, provisions, conditions, covenants, or obligations to M&T under this Interim Order; |
| | b. the Debtors' obtaining of credit or the incurring of indebtedness that is (i) secured by a security interest or other lien on all or any portion of the Collateral which is equal or senior to any security interest or other lien of M&T, or (ii) entitled to priority administrative status which is equal or senior to that granted to M&T; |
| | c. any lien or security interest purported to be created under the M&T Loan Documents shall be asserted by Debtors not to be, a valid and perfected lien on or security interest in any Collateral, with the priority required by the M&T Loan Documents or herein; |
| | d. the entry of an order by the Court granting relief from or modifying the automatic stay of section 362 of the Bankruptcy Code (i) to allow any creditor to execute upon or enforce a lien on or security interest in any Collateral, or (ii) with respect to any lien on or the granting of any lien on any Collateral to any state or local environmental or regulatory agency or authority, which in either case would have a material adverse effect on the business, operations, property, assets, or condition, financial or otherwise, of the Debtors; |
| | e. reversal, vacatur, or modification (other than a modification with the express prior written consent of M&T, or by Court order) of this Interim Order; |
| | f. dismissal of these chapter 11 cases (or any of them) or conversion of these chapter 11 cases (or any of them) to a chapter 7 case, or appointment in these chapter 11 cases of a chapter 11 trustee or examiner with enlarged powers or other responsible person; |
| | g. any misrepresentation of a material fact made after the Petition Date by the Debtors or its agents to M&T about the financial condition of the Debtors, the nature, extent, location or quality of any Collateral, or the disposition or use of any Collateral, including Cash Collateral; |
| | h. a material default by the Debtors in reporting financial information as and when required under this Interim Order; |
| | i. the sale of any material portion of the Debtors' assets outside the ordinary course of business without a Court order or the prior written consent of M&T; |
| | j. the filing by the Debtors of any motion seeking, or the granting of any motion providing for, reversal or modification of this Interim Order. |
| | k. any failure to of the Debtors to establish and meet any of the deadlines set forth below with respect to any sale of the Debtors' assets: |
| | <div align="center">Bid Deadline of June 7, 2018<br>Auction to be held on June 12, 2018<br>Sale Hearing to occur on June 21, 2018</div> |
| | *See* Interim Order at ¶ 7. |
| Establishment | An Event of Default includes any failure to of the Debtors to establish and meet |

3934177

| | |
|---|---|
| Of A Deadline Or Requirements For A Sale Or Plan | any of the deadlines set forth below with respect to any sale of the Debtors' assets:<br><br>Bid Deadline of June 7, 2018<br>Auction to be held on June 12, 2018<br>Sale Hearing to occur on June 21, 2018<br>*See* Interim Order at ¶ 7(k). |
| Limitation Of The Court's Authority, Or Enhancement Or Restriction Of The Rights, Powers, Or Duties Of A Trustee, Examiner, Debtor, Or Committee | The Replacement Liens shall be enforceable against the Debtors, their estates and any successors thereto, including without limitation, any trustee or other estate representative appointed in these chapter 11 cases, or any Successor Case. *See* Interim Order at ¶ 4(b).<br><br>The Cash Collateral may not be used: (a) in connection with or to finance in any way any action, suit, arbitration, proceeding, application, motion or other litigation of any type (i) against M&T or seeking relief that would impair their rights and remedies under the M&T Loan Documents or this Interim Order, including, without limitation, (A) to assert, commence, or prosecute any claims or causes of action whatsoever, including, without limitation, any actions for lender liability against M&T, any actions under section 105 of the Bankruptcy Code against M&T, any actions under chapter 5 of the Bankruptcy Code against M&T, or any actions under applicable, non-bankruptcy law or otherwise against M&T, (B) to prosecute an objection to, contest in any manner, or raise any defenses to, the validity, extent, amount, perfection, priority, or enforceability of any of the rights and obligations of M&T or seeking affirmative relief against M&T, or (C) for the payment of any services rendered by the professionals retained by the Debtors or any Creditors' Committee in connection with the assertion of or joinder in any claim, counterclaim, action, proceedings, application, motion, objection, defense or other contested matter, the purpose of which is to seek, or the result of which would be to obtain, any order, judgment determination, declaration or similar relief that would impair the ability of M&T to recover on the M&T indebtedness, as applicable, (ii) invalidating, setting aside, avoiding or subordinating, in whole or in part, the Pre-Petition Debt, (iii) for monetary, injunctive or other affirmative relief against M&T or its Collateral, or (iv) preventing, hindering or otherwise delaying the exercise by M&T of any rights and/or remedies under this Interim Order, the M&T Loan Documents, or applicable law, or the enforcement of realization (whether by foreclosure, credit bid, further order of the Court or otherwise) by M&T upon any of the Collateral; (b) to make any distribution under a plan of reorganization in these chapter 11 cases; (c) to make any payment in settlement of any claim, action or proceeding, before any court, arbitrator or other governmental body without prior written consent of M&T, unless otherwise ordered by the Court; (d) to pay any fees or similar amounts to any person who has proposed or may propose to purchase interests in the Debtors without the prior written consent of M&T, unless otherwise ordered by the Court, (e) to object, contest, or interfere with in any way the enforcement or realization upon any of the Collateral by M&T once an Event of Default has occurred; (f) to sell or otherwise dispose of Collateral without the prior consent |

12

of M&T, unless otherwise ordered by the Court; (g) to pay indebtedness outside the ordinary course of business without the prior written consent of M&T, unless otherwise ordered by the Court; (h) to incur any new indebtedness without the prior written consent of M&T, unless otherwise ordered by the Court; (i) to object to or challenge in any way the claims, liens, or interests (including interests in the Collateral) held by or on behalf of M&T; (i) to pay any costs or expenses that are not ordinary course operating expenses of the Debtor; or (k) to modify or seek to modify the rights of M&T under this Interim Order. *See* Interim Order at ¶ 9(b).

Upon entry of the Final Order, M&T shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to M&T with respect to proceeds, product, offspring or profits of any of the Collateral.  *See* Interim Order at ¶ 12.

Upon entry of the Final Order, M&T shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Collateral, as the case may be, and proceeds shall be received and applied in accordance with this Interim Order notwithstanding any other agreement or provision to the contrary. *See* Interim Order at ¶ 13.

M&T will not be required to file a proof of claim in these chapter 11 cases or any Successor Case or Cases for its claims to be allowed, and the Debtors' Stipulations shall be deemed to constitute a timely filed proof of claim. Any order entered by the Court in relation to the establishment of a bar date for any claim (including, without limitation, administrative claims) in these chapter 11 cases or any Successor Case or Cases shall not apply to M&T. *See* Interim Order at ¶ 15.

M&T has acted in good faith in connection with this Interim Order and its reliance on this Interim Order is in good faith. *See* Interim Order at ¶ 16.

This Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be enforceable *nunc pro tunc* to the Petition Date immediately upon entry. Immediately upon entry by this Court (notwithstanding any applicable law or rule to the contrary), the terms and provisions of this Interim Order shall become valid and binding upon and inure to the benefit of the Debtors, M&T, the U.S. Trustee, all other creditors of any of the Debtors, any committee appointed in these chapter 11 cases, and all other parties in interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in these chapter 11 cases, any Successor Case or Cases, or upon dismissal of these chapter 11 cases or a Successor Case or Cases. In the event of any inconsistency between the provisions of this Interim Order and any other order (including any "First Day" Pleadings and Orders relating thereto), the provisions of this Interim

13

| | |
|---|---|
| | Order shall govern and control. Any payments to be made under any order shall be made in accordance with this Interim Order and the Budget. *See* Interim Order at ¶ 18.<br><br>In the event any or all of the provisions of this Interim Order are hereafter modified, amended or vacated by a subsequent order of this Court or any other court, such modification, amendment or vacatur shall not affect the validity, perfection, priority, allowability, enforceability or non-availability of any advances, payments or use of cash whether previously or hereunder, or lien, claim or priority authorized or created hereby. Any liens or claims granted to M&T hereunder arising prior to the effective date of any such modification, amendment or vacatur of this Interim Order shall be governed in all respects by the original provisions of this Interim Order, including entitlement to all rights, remedies, privileges and benefits granted herein. *See* Interim Order at ¶ 19.<br><br>The provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order which may be entered: (a) confirming any plan of liquidation in these chapter 11 cases; (b) converting these chapter 11 cases to cases under chapter 7 of the Bankruptcy Code; (c) dismissing these chapter 11 cases or any Successor Case or Cases; or (d) pursuant to which this Court abstains from hearing these chapter 11 cases or a Successor Case or Cases. The terms and provisions of this Interim Order, including the claims, liens, security interests and other protections granted to M&T pursuant to this Interim Order, notwithstanding the entry of any such order, shall continue in these chapter 11 cases, in any Successor Case or Cases, or following dismissal of these chapter 11 cases or any Successor Case or Cases, and shall maintain their priority as provided by this Interim Order. *See* Interim Order at ¶ 20. |
| Limitation Or Waiver Of Rights Under § 506(C) Of The Code | The Replacement Liens shall not be subject to sections 506(c) (effective upon entry of the Final Order), 510, 547, 549, or 550 of the Bankruptcy Code. *See* Interim Order at ¶ 4(b).<br><br>The Adequate Protection Superpriority Claims, to the extent the Replacement Lien is deemed insufficient, shall have priority over all administrative expense claims and unsecured claims against the Debtors or their estates, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in ordered pursuant to sections 105, 326, 328, 330, 331, 364, 365, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 1113 and 1114 of the Bankruptcy Code, except and subject to fees pursuant to 28 U.S.C. § 1930(a)(6) and the Carve-out. *See* Interim Order at ¶ 4(d).<br><br>In no event shall any costs or expenses of administration be imposed upon M&T or any of the Collateral pursuant to sections 105(a), 506(c) and/or 552 of the Bankruptcy Code or otherwise without a Court order or the prior written consent of M&T, and no such consent shall be implied from any action, inaction or acquiescence by M&T. *See* Interim Order at ¶ 9(a). |

14

| | |
|---|---|
| | Except and subject to fees pursuant to 28 U.S.C. § 1930(a)(6) and the Carve-out, upon entry of the Final Order, no costs or expenses of administration which have been or may be incurred in these chapter 11 cases at any time shall be charged against M&T or any of its claims or the Collateral pursuant to sections 105 or 506(c) of the Bankruptcy Code, or otherwise. *See* Interim Order at ¶ 11. |
| Agreement With Respect To The Validity, Perfection, Or Amount Of The Lender's Pre-Petition Claim, Or The Waiver Of Claims Against The Lender | The Debtors stipulate that (i) the Bank has asserted a secured claim against the Debtors in the approximate principal amount of $6,765,518.03, plus accrued and unpaid interest, plus fees and costs pursuant to the M&T Loan Documents as of April 30, 2018, (ii) the Bank has a first priority, perfected security interest in substantially all of the Debtors' assets (the "Collateral") as described more particularly in the Motion. *See* Interim Order at ¶ C-D.

Immediately upon entry by this Court (notwithstanding any applicable law or rule to the contrary), the terms and provisions of this Interim Order shall become valid and binding upon and inure to the benefit of the Debtors, M&T, the U.S. Trustee, all other creditors of any of the Debtors, any committee appointed in these chapter 11 cases, and all other parties in interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in these chapter 11 cases, any Successor Case or Cases, or upon dismissal of these chapter 11 cases or a Successor Case or Cases. In the event of any inconsistency between the provisions of this Interim Order and any other order (including any "First Day" Pleadings and Orders relating thereto), the provisions of this Interim Order shall govern and control. Any payments to be made under any order (including any "First Day" order) shall be made in accordance with this Interim Order and the Budget. *See* Interim Order at ¶ 18.

In the event any or all of the provisions of this Interim Order are hereafter modified, amended or vacated by a subsequent order of this Court or any other court, such modification, amendment or vacatur shall not affect the validity, perfection, priority, allowability, enforceability or non-availability of any advances, payments or use of cash whether previously or hereunder, or lien, claim or priority authorized or created hereby. Any liens or claims granted to M&T hereunder arising prior to the effective date of any such modification, amendment or vacatur of this Interim Order shall be governed in all respects by the original provisions of this Interim Order, including entitlement to all rights, remedies, privileges and benefits granted herein. *See* Interim Order at ¶ 19.

The provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order which may be entered: (a) confirming any plan of liquidation in these chapter 11 cases; (b) converting these chapter 11 cases to cases under chapter 7 of the Bankruptcy Code; (c) dismissing these chapter 11 cases or any Successor Case or Cases; or (d) pursuant to which this Court abstains from hearing these chapter 11 cases or a Successor Case or Cases. The terms and provisions of this Interim Order, including the claims, liens, security interests and other protections granted to M&T pursuant to this Interim Order, |

| | |
|---|---|
| | notwithstanding the entry of any such order, shall continue in these chapter 11 cases, in any Successor Case or Cases, or following dismissal of these chapter 11 cases or any Successor Case or Cases, and shall maintain their priority as provided by this Interim Order. *See* Interim Order at ¶ 20. |
| Carve-Outs From Liens Or Super-Priorities | The amounts and categories described in the Budget are deemed a carve-out of the Bank's collateral. *See* Interim Order at ¶ G. |
| | Retained Professionals in these cases, other than the Debtors' investment banker (whose fees will be transaction based) shall be paid in accordance with the Budget, plus, a backstopping carve-out by M&T, up to $350,000, subject to appropriate fee applications and approval by the Bankruptcy Court (collectively, the "Carve-out").  *See* Interim Order at ¶ 3. |
| | As further adequate protection against any diminution in value of the interests of M&T in the pre-petition collateral, to the extent the Replacement Lien provided for hereby proves insufficient to protect M&T's interest in and to the cash collateral, M&T is hereby granted as and to the extent provided by sections 503(b) and 507(b) of the Bankruptcy Code allowed superpriority administrative expenses claims in these chapter 11 cases in the amount of the Pre-Petition Debt. *See* Interim Order at ¶ 4(c). |
| | The Adequate Protection Superpriority Claims, to the extent the Replacement Lien is deemed insufficient, shall have priority over all administrative expense claims and unsecured claims against the Debtors or their estates, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in ordered pursuant to sections 105, 326, 328, 330, 331, 364, 365, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 1113 and 1114 of the Bankruptcy Code, except and subject to fees pursuant to 28 U.S.C. § 1930(a)(6) and the Carve-out. *See* Interim Order at ¶ 4(d). |
| | Except and subject to fees pursuant to 28 U.S.C. § 1930(a)(6) and the Carve-out, upon entry of the Final Order, no costs or expenses of administration which have been or may be incurred in these chapter 11 cases at any time shall be charged against M&T or any of its claims or the Collateral pursuant to sections 105 or 506(c) of the Bankruptcy Code, or otherwise. *See* Interim Order at ¶ 11. |

## **BASIS FOR RELIEF**

27.     The Bankruptcy Code provides chapter 11 debtors-in-possession with the right to

use cash collateral to operate their businesses upon satisfaction of certain prerequisite(s).

Pursuant to section 363(c)(2) of the Bankruptcy Code:

3934177

> The trustee [or debtor-in-possession] may not use, sell, or lease
> cash collateral under paragraph 1 of this subsection, unless - (A)
> each entity that has an interest in such cash collateral consents; or
> (B) the court, after notice and a hearing, authorizes such use, sale,
> or lease in accordance with the provisions of this section.

11 U.S.C. § 363(c)(2).  The "provisions of this section" referred to in section 363(c)(2)(B)

quoted above includes section 363(e), which provides:

> Notwithstanding any other provision of this section, at any time, on
> request of an entity that has an interest in property used, sold, or
> leased, or proposed to be used, sold, or leased, by the trustee, the
> court, with or without a hearing, shall prohibit or condition such
> use, sale or lease as is necessary to provide adequate protection of
> such interest.

11 U.S.C. § 363(e).  That is, to the extent necessary, adequate protection is to be provided to a

party with an interest in property sought to be used by a debtor to balance a debtor's required use

of cash collateral and the rights of parties holding an interest in that cash collateral.  The Debtors

respectfully submit that the Court should order the relief requested herein under section

363(c)(2)(B) of the Bankruptcy Code given the adequate protection being provided under

sections 361 and 363(e) of the Bankruptcy Code as set forth herein.

28.    While section 361 of the Bankruptcy Code provides examples of forms of

adequate protection, such as granting replacement liens and administrative claims, courts decide

what constitutes sufficient adequate protection on a case-by case basis.  *See In re Columbia Gas

Sys., Inc.*, 1992 WL 79323, at *2 (Bankr. D. Del. Feb. 18, 1992); *In re Swedeland Dcv. Grp.*,

Inc., 16 F.3d 552, 564 (3d Cir. 1994); *In re N.J. Affordable Homes Corp.*, 2006 WL 2128624, at

*14 (Bankr. D.N.J. June 29, 2006); *see also In re Mosello,* 195 BR. 277, 289 (Bankr. S.D.N.Y.

1996); *In re Dynaco Corp.*, 162 B.R. 389, 394 (Bankr. D.N.H. 1993) (citing 2 Collier on

Bankruptcy § 361.01[1] at 361-66 (15th ed. 1993)) (explaining that what constitutes adequate

protection is not defined, and "must be determined based upon equitable considerations arising

from the particular facts of each proceeding").

29.     Regardless of the form of adequate protection given, "the entitlement to and measure of adequate protection is always determined by the extent of the anticipated or actual decrease in the value of the secured creditor's collateral during the bankruptcy case." *In re Gallegos Research Grp., Corp.,* 193 B.R. 577, 584 (Bankr. D. Colo. 1995).  Although section 361 of the Bankruptcy Code sets forth three non-exclusive methods of how an interest in property may be adequately protected, "adequate protection" is not defined in the Bankruptcy Code. *Swedeland,* 16 F.2d at 564; *In re Shriver,* 33 B.R. 176, 181 (Bankr. N.D. Ohio 1983).

30.     Pursuant to section 361 of the Bankruptcy Code, a debtor may provide adequate protection by providing it with a replacement lien.  A secured lender is only entitled to adequate protection up to the value of the collateral supporting its secured claim; it is not entitled to adequate protection for lost opportunity costs. *Gallegos Research Group.*, 193 B.R. at 584-85 (citing *United Savings Association of Texas v. Timbers of Inwood Forest Associates, Ltd.,* 484 U.S. 365 (1988)); *Cann & Saul Steel Co.*, 76 B.R. 479, 483 (Bankr. E. D. Pa. 1987).

31.     To adequately protect the Bank's interests during the period of the Budget, the Debtors propose in their Interim Order to grant the Bank adequate protection in the form of replacement liens pursuant to sections 361 and 363 of the Bankruptcy Code, to the extent the Bank's cash collateral is used and to the extent of any diminution in the value of the Bank's collateral, with the same priority in the Debtors post-petition collateral, and proceeds thereof, that the Bank held in the Debtors' prepetition collateral.  Courts have consistently held that replacement liens are sufficient adequate protection. *See In re Mt. Olive Hospitality, LLC*, 2014 WL 1309953, at *3, n. 6 (D.N.J. March 31, 2014); *see also In re Airport Inn Assocs., Ltd.*, 132 B.R. 951, 960 (Bankr. D. Col. 1990) ("The court could order a lien in post-petition accounts

receivable as adequate protection if that relief was requested . . . ."); *In re Int'l Design & Display Grp., Inc.*, 154 B.R. 362, 364 (Bankr. S.D. Fla. 1993) (court authorized debtor to use cash collateral and, as adequate protection, granted secured creditor replacement lien on all post-petition accounts receivable, inventory and contracts to the extent the creditor's collateral was depleted). As further adequate protection against any diminution in value of the interests of M&T in the pre-petition collateral, to the extent the replacement lien proves insufficient to protect M&T's interest in and to the cash collateral, the Debtors seek to grant M&T, to the extent provided by sections 503(b) and 507(b) of the Bankruptcy Code, allowed superpriority administrative expenses claims in these chapter 11 cases in the amount of the Pre-Petition Debt, which shall have priority over all administrative expense claims and unsecured claims against the Debtors or their estates, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in ordered pursuant to sections 105, 326, 328, 330, 331, 364, 365, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 1113 and 1114 of the Bankruptcy Code, except and subject to fees pursuant to 28 U.S.C. § 1930(a)(6) and the Carve-out (as defined in the Interim Order). Also, the Debtors propose to pay the Bank monthly adequate protection payments in the amount of $37,038.56 pursuant to the Budget.

32.     The Debtors respectfully submit that the protections proposed herein are appropriate to adequately protect the Bank's interests. The Bank's collateral is not declining in value during the period covered by the Budget. Liquor licenses are a significant asset of the Debtors and maintain a stable value; moreover, this is the busiest season for weddings and graduations, which will result in revenue for the restaurants and catering businesses. Through the use of cash collateral, the Debtors will be able to maintain their operations as a going concern

19

post-petition while protecting and preserving and enhancing the value of their collateral for the benefit of the Bank, other creditors, and the estates.  Thus, the best way to ensure that the Bank's security interests are not jeopardized is through the use of their cash collateral.  *See In re Aqua Associates*, 123 B.R. 192, 196 (Bankr. E.D. Pa. 1991) ("The important question, in determination of whether the protection to a creditor's secured interest is adequate, is whether that interest, whatever it is, is being unjustifiably jeopardized.").   Without the immediate use of cash collateral, Debtors will be unable to pay ordinary and necessary business expenses including, but not limited to, payroll and related obligations, utilities, amounts owed to vendors and other suppliers of goods and services, insurance, and other costs of administering the estates.  The use of cash collateral as requested herein is therefore critical to preserving the value of the Debtors' estates for all parties-in-interest.

## WAIVER OF MEMORANDUM OF LAW

33.     Because the legal basis upon which the Debtors rely is incorporated herein and the Motion does not raise any novel issues of law, the Debtors respectfully request that the Court waive the requirement to file a separate memorandum of law pursuant to Local Rule 9013 1(a)(3).

## WAIVER OF BANKRUPTCY RULES 6004(a) AND 6004(h)

34.     The Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and a waiver of any stay of the order proposed herein, including under Bankruptcy Rules 4001(a)(3) and 6004(h).

## NO PRIOR REQUEST

35.     No prior request for relief sought herein has been made to this Court or any other court.

3934177

## NOTICE

36.     By separate application filed simultaneously herewith, the Debtors have requested

that the Court shorten the notice period and grant an expedited interim hearing on this Motion

and other "first day motions" so that the Debtors have sufficient funds to continue operations.

Pursuant to Bankruptcy Rules 4001(b)(2), the Debtors request that the Court set a date for the

final hearing that is as soon as practicable, and fix the time and date prior to the final hearing for

parties to file objections to the Motion.

37.     Pursuant to Bankruptcy Rule 4001, the Debtors respectfully request it be

authorized to provide notice of the Interim Hearing and the Final Hearing on the Motion by

serving a copy of the Motion, together with a copy of the Interim Order by hand, overnight mail,

first class mail, facsimile or by electronic mail, upon (i) the Office of the United States Trustee

for the District of New Jersey, One Newark Center, Suite 2100, 1085 Raymond Boulevard,

Newark, NJ 07102; (ii) counsel for the M&T, c/o Diane E. Vuocolo, Greenberg Traurig, LLP,

2700 Two Commerce Square, 2001 Market Street, Philadelphia, PA 19103; (iii) the Debtors'

secured creditors; (iv) the Internal Revenue Service, 2970 Market Street, Mail Stop 5-Q30.133,

Philadelphia, PA 19104-5016 (overnight mail address); (v) the New Jersey Division of Taxation

Compliance and Enforcement Bankruptcy Unit, 50 Barrack Street, P.O. Box 245, 9th Floor,

Trenton, NJ 08695; (vi) the Office of the Attorney General of the State of New Jersey, Division

of Law, Richard J. Hughes Justice Complex, 25 Market Street, Trenton, NJ 08625; (vii) the

Office of the United States Attorney, Peter Rodino Federal Building, 970 Broad Street, Suite

700, Newark, NJ 07102; (viii) the United States Attorney General, United States Department of

Justice, Ben Franklin Station, P.O. Box 683, Washington, DC 20044; (ix) the Debtors'

consolidated thirty largest unsecured creditors; and (x) those parties who have filed a notice of appearance and request for service of pleadings in this Chapter 11 case pursuant to Fed. R. Bankr. P. 2002. The Debtors believe that such notice to such parties is reasonably calculated to inform creditors regarding the emergency relief that is being requested and is sufficient under the circumstances.

## **CONCLUSION**

For the foregoing reasons, the Debtors respectfully request entry of the accompanying Interim Order in the form annexed hereto, and for such other and further relief as is just and proper.

Dated: May 2, 2018

Respectfully submitted,

**PORZIO, BROMBERG & NEWMAN, P.C.**
*Proposed Counsel to the Debtors*


By: */s/Warren J. Martin Jr.*
      Warren J. Martin Jr.

22

3934177