| |
|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY<br>**Caption in compliance with D.N.J. LBR 9004-2(c)**<br>**FOX ROTHSCHILD LLP**<br>(Formed in the Commonwealth of Pennsylvania)<br>Michael J. Viscount, Jr., Esq.<br>Paul J. Labov, Esq.<br>Martha B. Chovanes, Esq.<br>1301 Atlantic Avenue, Suite 400<br>Atlantic City, NJ 08401<br>(609) 348-4515/fax (609) 348-6834<br>mviscount@foxrothschild.com<br>plabov@foxrothschild.com<br>mchovanes@foxrothschild.com<br><br>*Counsel for the Official Committee*<br>*of Unsecured Creditors* |

| | |
|---|---|
| In re:<br><br>Garces Restaurant Group, Inc., d/b/a Garces Group, et al.[1],<br><br>Debtors. | Case No.: 18-19054 (JNP)<br><br>(Jointly Administered)<br><br>Chapter 11<br><br>Judge: Jerrold N. Poslusny, Jr. |

**OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO THE CONSOLIDATED FIRST AND FINAL APPLICATION OF COHNREZNICK CAPITAL MARKETS SECURITIES, LLC, AS INVESTMENT BANKER TO THE DEBTORS FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF ALL ACTUAL AND NECESSARY EXPENSES INCURRED FOR THE PERIOD MAY 2, 2018 TO AUGUST 1, 2018**

The Official Committee of Unsecured Creditors (the "Committee") of Garces Restaurant Group, Inc. d/b/a Garces Group *et. al.*, the above-captioned debtors and debtors-in-possession (the "Debtors"), by and through its undersigned counsel, Fox Rothschild LLP, hereby files their Objection (the "Objection") To Consolidated First and Final Application of CohnReznick

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each debtors' federal tax identification number, are: GRGAC1, LLC d/b/a Armada (7047); GRGAC2, LLC d/b/a Village Whiskey (7079); GRGAC3, LLC d/b/a Distrito Cantina (7109); GRGAC4, LLC (0542); Garces Restaurant Group, Inc. d/b/a/ Garces Group (0697); Latin Valley 2130, LLC; La Casa Culinary, LLC d/b/a Armada Restaurant (4127); Garces Catering 300, LLC d/b/a Garces Catering (3791); Latin Quarter Concepts, LLC d/b/a Tinto d/b/a Village Whiskey (0067); UrbanFarm, LLC d/b/a JG Domestic (3014); GR300, LLC d/b/a Volver (0347); GRG2401, LLC (7222); GRGChubb1, LLC (8350); GRGKC1, LLC; GRGWildwood, LLC (9683); GRGNY2, LLC (0475); GRGDC2, LLC d/b/a Latin Market (8878);GRG Bookies, LLC d/b/a The Olde Bar (4779); and GRGAC5, LLC (9937).

Capital Markets Securities, LLC ("CRC"), as Investment Banker To The Debtors For Allowance of Compensation and Reimbursement of All Actual and Necessary Expenses Incurred For the Period May 2, 2018 to August 1, 2018 ( the "Fee Application") [Docket. No. 420]. In support of its Objection, the Committee respectfully represents as follows:

**BACKGROUND**

1. On May 11, 2018, the Debtors filed an application seeking to employ CRC as investment banker for the Debtors. [Docket 83].

2. The Committee filed an objection to the CRC Retention Application and, among other things, sought and was granted section 330 review of any fee application filed by CRC. [Docket No. 293].

3. After completion of the sale process, a number of facts have come to light, which highlight the deficiencies in CRC's representation in this transaction, which the Committee believes should reduce significantly the compensation paid to CRC for its services in this case.

4. First, CRC did not bring by 3BM1, LLC ("Ballards") to the table in this case. Rather, Ballards was brought into the transaction by David Maser, a friend of Jose Garces.

5. CRC did not bring a single additional party to the auction.

6. Critically, CRC knew from the outset of this case that M&T Bank would never allow the sale as described in the stalking horse APA to close because M&T Bank reiterated that position both pre-petition and on the record at the various hearing before this Court.

7. CRC was not involved or responsible for the increase in the cash purchase price for the Sale, which was increased by $1.5 million solely through the efforts of counsel for M&T Bank and the Committee.

8. CRC's marching orders were to drum up interest and bring additional parties to the table. CRC's efforts were completely unsuccessful. CRC did perform certain necessary services to the Debtors pre-petition, including sending out flyers and setting up a data room. However, post-petition their services were limited to sending emails, being available to answer questions and being on site visits.

9. Given that CRC has already been paid a $50,000 retainer, they have already been paid a reasonable fee for the services and benefit they provided to the estate and no further fees should be awarded.

10. However, if this Court believes that an additional fees is appropriate, CRC should at the very least, not be awarded the 2.5% transaction fee on the $1.5 million increase in the cash purchase price—it had absolutely no involvement in increasing the cash purchase price for the sale to Ballards from $2 million to $3.5 million. Accordingly, CRC is not entitled to the success fee related to the $1.5 million dollar increase in value created by the Committee and the Bank and its compensation award should be adjusted accordingly.

**OBJECTION**

A. **Standard For Evaluating The Objection To Fees and Costs.**

11. Section 330(a)(1) of the Bankruptcy Code provides that, after notice and a hearing, the court may award to a professional person employed under section 327 "reasonable compensation for actual, necessary, services rendered" by such professional person. 11 U.S.C. §330(a)(1).

12. Sections 330(a)(3)(A)-(F) of the Bankruptcy Code provide that, in determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including the time

3

spend on such services; the rates charged for such services; whether the services were necessary to the administration of, or beneficial at the time at which the services were rendered toward the completion of, a case under this title; whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title. Id. at §330(a)(3)(A)-(F). Additionally, Section 330(a)(4)(A) provides that a court shall *not* allow compensation for unnecessary duplication of services; or services that were not reasonably likely to benefit the debtor's estate; or necessary to the administration of a case. Id. at § 330(a)(4)(A).

13. Professional fees may not be awarded unless and until the applicant shows that there is a benefit to the estate and that the fees are reasonable and necessary. See In re Engel, 124 F.3d 567, 573 (3d Cir. 1997). See also, In re Busy Beaver Building Centers, Inc., 19 F.3d 833, 848 (3d 1994). These are critical threshold issues before the awarding of any fees or compensation. See Rubner & Kutner, P.C. v. U.S. Trustee (In re Lederman Enterprises), 997 F.2d 1321, 1322-23 (10th Cir. 1993) (holding that the disallowance of fees for services which were not necessary or beneficial to the estate should not be considered a penalty but rather a statutory imperative).

14. The applicant bears the burden of proof as to entitlement and reasonableness of fees and expenses. Norman v. Housing Authority of Montgomery, 836 F.2d 1292, 1303 (11th Cir. 1988).

15. Part of this burden is providing sufficient documentation to support the authorization of fees. Hensley v. Eckerhart, 461 U.S. 424, 433 (1983) ("Where the documentation of hours is inadequate, the district court may reduce the award accordingly").

16. If an applicant fails to sustain its burden of reasonableness, a court may properly deny the application for compensation. See In re Beverly Mfg. Corp., 841 F.2d 365, 371 (11th Cir. 1988). Similarly, a court may reduce a professional's fees or expenses when they are disproportionate to the benefit to the estate, even if the court already has approved the professional's retention under Sections 327 and 328 of the Bankruptcy Code. See Zolfo, Cooper & Co. v. Sunbeam-Oster Co., Inc., 50 F.3d 253, 262–63 (3d Cir. 1995) (affirming lower court's denial of improperly documented and inadequately detailed expenses). See also In re Taxman Clothing Co., 49 F.3d 310, 316 (7th Cir. 1995); Section 330, and the Bankruptcy Code as a whole, have an "overriding concern for keeping administrative expenses to a minimum so as to preserve much of the estate as possible for creditors." In re Das A. Borden & Co., 131 F.3d 1459, 1464 (11th Cir. 1997).

**B. CRC's Application Should Be Denied Because the Amount Requested Is Disproportionate To the Benefit That CRC Provided.**

17. The amount of compensation that CRC is requesting is disproportionate to the benefit that CRC provided. CRC is seeking approval of $325,506.00 in fees. However, because the success of these cases, to the extent they can be described as such, is in no way attributable to CRC, this Court should allow payment only of the Retainer CRC already received. In re Hall, 415 B.R. 911, 924 (Bankr. M.D.Ga. 2009).

18. Like in Hall, the success of these cases and the closing on the sale of the Debtors' assets is simply not attributable to CRC. CRC brought *no one* to the table. Ballards was brought to the sale, prepetition, by David Maser, a friend of Mr. Garces. After being retained in the

5

chapter 11 cases, despite sending out teasers and holding conversations with various potential buyers, CRC was unable to bring even one other potential purchaser to the auction.

19. Further, despite M&T Bank's vociferous statement that they would not allow a sale with a cash price of $2 million, which it espoused both before and after the retention of CRC, CRC nonetheless sought to have Ballards approved as the stalking horse bidder. Unsurprisingly, when no additional potential bidder was present at the auction, M&T Bank refused to allow the sale.

20. It was the Committee counsel and M&T Bank's counsel that negotiated with Ballards to increase the cash purchase price by an additional $1.5 million; CRC had no part in the discussion with Ballards and did nothing to increase the ultimate purchase price. Had the Committee and M&T Bank not been successful in increasing the cash purchase price for Debtor's assets and negotiating a significant contribution by Mr. Garces, M&T Bank would not allowed this sale to occur, the sale would not have closed, and CRC would have received only its $50,000 retainer.

21. CRC's work created only a very small benefit to the estate, for which it has already been paid $50,000. CRC did not provide a benefit to the estate justifying such a large fee and such request is neither reasonable or necessary.

**RESERVATION OF RIGHTS**

22. The Committee reserves its rights to supplement or otherwise adopt additional arguments in connection with this Joinder and the CRC Fee Application up to and including at the hearing.

## CONCLUSION

**WHEREFORE**, the Committee respectfully requests that the Court (a) allow the CRC Fee Application in a reduced amount consistent with the Committee's Objection and (b) for such other relief as this Court deems just and proper.

        Respectfully submitted,

        **FOX ROTHSCHILD LLP**

        By: *Paul J. Labov*
            Michael J. Viscount, Jr.
            Paul J. Labov
            Martha B. Chovanes

        *Attorneys for Official Committee of Unsecured Creditors*

Dated: August 30, 2018